**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

**WASKEY BRIDGES, INC.**

**CIVIL ACTION**

**VERSUS**

**NO. 24-574-JWD-SDJ**

**MAXIM CRANE WORKS, L.P.**

**RULING AND ORDER**

This matter comes before the Court on the *Motion to Dismiss Plaintiff's Second Amended Complaint* ("*MTD*") (Doc. 74) filed by Defendant Markel American Insurance Company ("MAIC"). Plaintiff Waskey Bridges, Inc., opposes the motion. (Doc. 78.) Defendant has filed a reply. (Doc. 81.)

Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, the Court will GRANT Defendant's *MTD*.

## I. BACKGROUND[1]

This dispute arises from an equipment lease agreement. (Doc. 72 at ¶ 5.) Plaintiff is a specialty precast manufacturer whose operations require various types of equipment, including cranes. (*Id.* at ¶¶ 6–7.) Waskey agreed to rent a conventional crawler crane (the "Crane") from Maxim on or about March 31, 2020. (*Id.* at ¶ 9.) Defendant MAIC issued Waskey an insurance

[1] The following factual allegations come primarily from Plaintiff's *Second Amended Complaint* (Doc. 72). For purposes of Defendant's *MTD*, the Court accepts as true Plaintiff's well-pleaded factual allegations. *See, e.g.*, *Russell v. Choicepoint Servs., Inc.*, 302 F. Supp. 2d 654, 658 (E.D. La. 2004) (citing *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001)) ("Uncontroverted allegations . . . must be accepted as true."); *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (reciting the Rule 12(b)(6) standard).

policy (the "Policy") to provide coverage for "Waskey's use of the Crane, and coverage for claims made related to the Crane." (*Id.* at ¶ 12.)

The Crane was approximately 20 years old when it was delivered to Waskey. (*Id.* at ¶ 13.) In addition to leasing the Crane, Maxim provided a maintenance service contract, "whereby Maxim would perform monthly maintenance on the Crane for Waskey." (*Id.* at ¶ 14.) Maxim also agreed to perform long-term preventative maintenance every 250 hours or every three months, whichever occurred first. (*Id.* at ¶ 15.) Waskey performed some routine maintenance on the Crane. (*Id.* at ¶ 16.) Nevertheless, Waskey "experienced various maintenance issues with the Crane" during the lease, eventually "hindering its ability to use the Crane." (*Id.* at ¶¶ 17, 21.) Waskey terminated the lease in January 2023, citing "its inability to use the Crane due to continuous down time." (*Id.* at ¶ 22.)

When a maintenance issue arose, Waskey would inform Maxim so Maxim could address the issue. (*Id.* at ¶ 18.) Maxim sent repair bills for this work even though "[t]he terms of the lease provided that Waskey was not responsible for repairs attributable to wear and tear from normal use." (*Id.* at ¶¶ 19–20.) In March 2023, after the lease was terminated, Maxim sent a notice to Waskey "claiming that the Crane was damaged while on rent and under the care, custody, and control of Waskey." (*Id.* at ¶ 23; Doc. 6-3.) The notice informed Waskey that it was responsible for "all costs and expenses arising or resulting from the accident" and advised Waskey to notify its insurer so the damage could be inspected timely. (Doc. 6-3 at 1.) MAIC did not receive notice of the claim until December 16, 2024. (Doc. 78-1 at 4, 10.)

In May 2024, Maxim sent another demand for $709,286.57 "for repairs to the Crane that Maxim allege[d] [were] due to the actions of Waskey." (Doc. 72 at ¶ 24.) Waskey provided MAIC with notice of Maxim's demand because Waskey believed that the alleged damages were covered

under the Policy. (*Id.* at ¶¶ 25–26.) Waskey does not say when it provided MAIC notice of the demand, but MAIC asserts it did not learn about the damage until December 16, 2024. (Doc. 78-1 at 4.) MAIC inspected the Crane, investigated Maxim's demand, and ultimately denied coverage for Waskey's claim on August 4, 2025. (*Id.* at ¶¶ 27–28.) Waskey disputes that it caused the damage to the Crane, but to the extent it is found liable, Waskey asserts that the Policy covers the alleged damages so MAIC "is obligated under the Policy to cover any such damages." (*Id.* at ¶ 29.)

Waskey initially filed suit against Markel only on June 6, 2024. (Doc. 1-2 at 3.) On September 16, 2025, Waskey filed an *Amended Complaint* to add MAIC as a defendant. (Doc. 40.) This *MTD* concerns Waskey's *Second Amended Complaint*, which was filed on April 27, 2026. (Doc. 72.)

Waskey brings two claims against MAIC. (*Id.* at ¶¶ 30–58.) The first is for wrongful denial of coverage of the "alleged physical damage" to the Crane. (*Id.* at ¶¶ 46–48.) Waskey alleges that "the alleged property damage to the Crane falls within the scope of the Policy" so MAIC wrongfully denied coverage when it claimed that the damage was not covered under the Policy. (*Id.* at ¶¶ 47–48.) The second claim is for a declaratory judgment to establish that the Policy provides coverage for the alleged damage and that MAIC is obligated to cover the alleged damage. (*Id.* at ¶¶ 51–58.)

MAIC moved to dismiss both of these claims pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 74.) MAIC argues that: (1) Waskey's claims are facially prescribed; (2) the alleged damage is excluded from coverage; (3) the *Second Amended Complaint* fails to satisfy *Twombly/Iqbal*; and (4) the declaratory judgment claim is redundant. (Doc. 74-1 at 1.)

## II. Rule 12(b)(6) Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Hamilton v. Dall. Cnty.*, 79 F.4th 494, 499 (5th Cir. 2023) (en banc) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

"To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d at 210 (quoting *Twombly*, 550 U.S. at 555). "In deciding whether the complaint states a valid claim for relief, we accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Id.* (citing *MySpace, Inc.*, 528 F.3d at 418). The Court "do[es] not accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Id.* (quoting *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007)). "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

The Court's "task, then, is 'to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.'" *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Iqbal*, 556 U.S. at 678)). "[A] claim is plausible if it is supported by 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [alleged misconduct].'" *Calhoun v. City of Hou. Police Dep't*, 855 F. App'x 917, 919–20 (5th Cir. 2021) (per curiam) (quoting *Twombly*, 550 U.S. at 556).

## III. DISCUSSION

### A. Prescription

#### a. Parties' Arguments

##### *1. Defendant's MTD (Doc. 74)*[2]

MAIC argues that Waskey's suit against it is facially prescribed because the Policy required Waskey to bring suit "within two years after 'you' first have knowledge of the loss." (Doc. 74-1 at 12 (citing Doc. 74-2 at 30–31, 71–72).) There are two potential coverages at issue (the Contractors' Equipment coverage and the Commercial Output Program coverage), but both have the two-year limitation for bringing suit. (Doc. 74-1 at 12.) MAIC explains that the Louisiana Supreme Court has recognized that "in the absence of a statutory prohibition, a clause in an insurance policy fixing a reasonable time to institute suit is valid." (*Id.* (quoting *Taranto v. La. Citizens Prop. Ins. Corp.*, 2010-0105 (La. 3/15/11), 62 So. 3d 721, 728).) MAIC argues that Waskey knew of the alleged damage to the Crane in January 2023 when it cancelled the lease, or, at the latest, by March 2023 when Maxim sent its notice letter. (*Id.* at 12–13.) Therefore, according to MAIC, the deadline to sue was in March 2025, but Waskey did not file suit against MAIC until September 16, 2025.[3] (*Id.* at 10, 13.) So, the claim is facially prescribed, and the burden shifts to Waskey to show that the prescriptive period has been suspended, interrupted, or renounced. (*Id.* (citing *Wilhike v. Polk*, 2008-0379 (La. App. 4 Cir. 11/19/08) 999 So. 2d 83, 85); Doc. 40.)

---

[2] In addition to the arguments addressed below, MAIC heads off a potential argument that the claims against MAIC in Waskey's *Second Amended Complaint* relate back to its initial complaint filed on June 6, 2024. (Doc. 74-1 at 14–15.) Waskey does not address that argument, so it is not detailed here. Further, MAIC is clearly correct that the *Second Amended Complaint* cannot relate back because MAIC, as a newly added defendant, did not have notice of the action nor did it know or should it have known that it would have been sued but for mistake. Fed. R. Civ. P. 4(m), 15(c); *Vuoncino v. Forterra, Inc.*, 140 F.4th 200, 207 (5th Cir. 2025).

[3] Waskey first filed suit against MAIC in its *Amended Complaint* on September 16, 2025. (Doc. 40.) Waskey amended that complaint on April 27, 2026. (Doc. 72).

MAIC also argues that if Waskey intends to claim it did not have "knowledge of the loss" until the May 2024 demand letter from Maxim, that argument is foreclosed for two reasons. (Doc. 74-1 at 13–14.) First, MAIC explains that the Louisiana Supreme Court has held that "inception of the loss" happens when the damage occurs, not when the full extent of the damage is ascertained. (*Id.* (citing *P.O.P. Constr. Co. v. State Farm Fire & Cas. Co.*, 56910 (La. 2/23/76), 328 So. 2d 105, 107 (Dennis, J.); *Gremillion v. Travelers Indemnity Co.*, 50314 (La. 11/9/70), 240 So. 2d 727, 731).) Second, this Policy insures against "risks of direct physical loss," not "liability or financial obligations owed to others." (*Id.* at 14; Doc. 74-2 at 23, 58.)

#### *2. Plaintiff's Opposition (Doc. 78)*

As MAIC predicted, Waskey argues that its claim is not prescribed because it did not have knowledge of the loss until Maxim sent its May 6, 2024 demand letter detailing the cost of damages. (Doc. 78 at 13.) Waskey explains that under Louisiana law, loss "in the specific context of insurance, [is] 'the amount of an insured's financial detriment by . . . damage that the insurer is liable for.'" (*Id.* (quoting *Mangerchine v. Reaves*, 2010-1052 (La. App. 1 Cir. 3/25/11), 63 So. 3d 1049, 1056 (quoting *Merriam-Webster's Collegiate Dictionary* 736 (11th ed. 2008))).) Therefore, prescription began to run on May 6, 2024, and Waskey was still within the two-year period when it filed suit against MAIC on September 16, 2025. (*Id.*)

Further, Waskey asserts that MAIC cannot meet its burden to prove that Waskey knew of the loss prior to September 16, 2023. (*Id.* at 11–13 (citing *Million v. Cos-Mar Co.*, No. 21-30250, 2022 WL 317662, at *4 (5th Cir. Feb. 2, 2022)).) Waskey does not think its allegations in paragraphs 22 and 23 of the *Second Amended Complaint*—explaining that Waskey terminated the lease in January 2023 and that Maxim sent notice of the alleged damages in March 2023—"establish on [their] face, knowledge of the loss and as a result, that this matter is prescribed." (*Id.*

at 12.) According to Waskey, those two paragraphs do not prove what Waskey did or did not know in January and March 2023. (*Id.*)

Waskey distinguishes *P.O.P Construction Co.*, which MAIC used to argue that "inception of the loss" happens when the damage occurs, not when the full extent of the damage is ascertained. (*Id.* at 14 (citing Doc. 74-1 at 13–14).) Waskey points out that *P.O.P Construction Co.* involved a fire insurance policy, so it is inapplicable to this case. (*Id.*) Further, the insurance policy in *P.O.P Construction Co.* used the phrase "inception of the loss" and this policy uses the language "knowledge of the loss." (*Id.*) According to Waskey, that difference in language makes *P.O.P Construction Co.* "inapposite." (*Id.*)

Finally, Waskey argues that its claim is timely because Markel did not deny coverage until August 2025. (*Id.* at 15.) Only then did Waskey's wrongful denial of coverage claim accrue so filing suit a month later was timely. (*Id.*)

### 3. *Defendant's Reply (Doc. 81)*

MAIC reasserts that Waskey's claims are facially prescribed because Waskey did not bring suit within two years after Waskey "first ha[d] knowledge of the loss." (Doc. 81 at 1 (quoting Doc. 74-2 at 30–31, 71–72).) MAIC explains that the Policy insured against "risks of direct physical loss," so "knowledge of the loss" occurred when Waskey first learned of physical damages to the Crane. (*Id.* at 1–2 (quoting Doc. 74-2 at 23, 30–31, 58, 71–72).) "Based on the face of the pleadings, Waskey knew the Crane was damaged by March 2023 at the latest" when it received the notice letter from Markel. (*Id.* at 2.)

MAIC again rejects Waskey's argument that prescription could not run until it received the second demand letter that included a specified damage amount. (*Id.*) Citing *Marin v. Exxon Mobil Corp.*, 2009-2368, 2009-2371 (La. 10/19/10), 48 So. 3d 234, 250, MAIC explains that prescription does not wait until a plaintiff has "full knowledge of the extent of damage," it "begins to run when

the plaintiff should have acquired knowledge of the damage to their property." (*Id.*) Therefore, Waskey knew of the damage when it cancelled the lease in January 2023, or at the latest in March 2023 when it received the notice letter from Markel. (*Id.*)

MAIC disagrees with Waskey's definition of loss from *Mangerchine*. (*Id.* at 3.) MAIC says *Mangerchine* is inapplicable because it addressed when there was hidden property damage and did not involve a suit limitation provision. (*Id.*) MAIC cites three cases that define knowledge of loss in the context of limitation-of-suit provisions at the time of the casualty event, not when the full amount of liability is known. (*Id.* (citing *Gremillion*, 240 So. 2d at 731; *P.O.P. Constr. Co.*, 328 So. 2d at 107–08; *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1287 (5th Cir. 1990)).) "Waskey's objection that the Louisiana Supreme Court interpreted 'inception of the loss' rather than 'knowledge of the loss' misses the point." (*Id.*) The definition of loss is the relevant issue and that clearly means, in MAIC's opinion, the direct physical loss to the Crane, not the potential liability to Markel. (*Id.* at 4.) MAIC further asserts that even if loss means Waskey's potential liability to Markel, Waskey first learned of that in March 2023 when it received Markel's first notice letter. (*Id.*)

Lastly, MAIC argues that Waskey's accrual argument "has no bearing on whether its claims are prescribed" because the Louisiana Supreme Court has held that prescription runs from the event insured against. (*Id.* at 4–5 (citing *Gremillion*, 240 So. 2d at 731; *P.O.P. Constr. Co.*, 328 So. 2d at 107–08).) Additionally, Louisiana Revised Statute § 22:868(B) allows parties to an insurance policy to limit a policyholder's right of action to no less than two years from the date of loss, or no less than one year from when the cause of action accrues. (*Id.* at 5.)

**b. Law and Analysis**

A court sitting in diversity applies the substantive law of the forum state, therefore Louisiana law applies to this case. *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938). As an initial matter, the Court agrees with MAIC that Waskey's accrual argument "has no bearing on whether its claims are prescribed" because the Louisiana Supreme Court has held that prescription runs from the event insured against. (Doc. 81 at 4–5 (citing *Gremillion*, 240 So. 2d at 731; *P.O.P. Constr. Co.*, 328 So. 2d at 107–08).) Under Louisiana law, "[a]n insurance policy is a contract between the insured and insurer and has the effect of law between them." *Gorman v. City of Opelousas*, 2013-1734 (La. 7/1/14), 148 So. 3d 888, 892. "When the words of an insurance contract are clear and explicit and lead to no absurd consequences, courts must enforce the contract as written and may make no further interpretation in search of the parties' intent." *Id.* at 892. "Whether contract language is clear or ambiguous is a question of law." *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 181 (5th Cir. 2007). "When the language of an insurance policy is clear, courts cannot alter its terms under the guise of interpretation." *Etienne v. Nat'l Auto. Ins. Co.*, 99-2610 (La. 4/25/00), 759 So. 2d 51, 54. The "fact that one party may create a dispute about the meaning of a contractual provision does not render the provision ambiguous." *Campbell v. Melton*, 2001-2578 (La. 5/14/02), 817 So. 2d 69, 76. "[M]erely because an insurance policy is a complex instrument requiring analysis to understand it does not render it ambiguous." *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 93-0911 (La. 1/14/94), 630 So. 2d 759, 766.

The "Suits Against Us" provision[4] of the Policy is at issue here. The Court finds that provision is clear: an insured must bring suit against MAIC "within two years after [they] first

[4] Suit Against Us -- No one may bring a legal action against "us" under this coverage unless:
a. all of the "terms" of the Commercial Output Program coverages have been complied with; and
b. the suit has been brought within two years after "you" first have knowledge of the loss.
If any applicable law makes this limitation invalid, then suit must begin within the shortest period permitted by law. (Doc. 74-2 at 30–31, 71–72.)

have knowledge of the loss." (Doc. 74-2 at 30–31, 71–72.) Therefore, the only issue is when Waskey first had "knowledge of the loss" (*id.*) since under the policy prescription begins to run when the insured first has knowledge of the loss.

"A party may raise a statute of limitations defense in a motion to dismiss for failure to state a claim." *R & R Motorsports, LLC v. Textron Specialized Vehicles, Inc.*, No. 21-2014, 2022 WL 1984145, at *2 (E.D. La. June 6, 2022) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 141 (5th Cir. 2007)). Generally, the party raising a prescription argument bears the burden of proving its application. *Roane v. Jones*, 47,860 (La. App. 2 Cir. 4/10/13), 116 So. 3d 700, 707. However, when a defendant "shows that the petition is prescribed on its face, the plaintiff bears the burden of proving [that] the prescriptive period has been suspended, interrupted or renounced." *Wilhike*, 999 So. 2d at 85 (citations omitted). Thus, if MAIC shows that Waskey's claims against it are facially prescribed, the burden shifts to Waskey to prove that the prescriptive period has been suspended, interrupted, or renounced.

To determine when Waskey had knowledge of the loss, the Court must first clarify what the loss was. Waskey contends the loss was Markel's May 2024 demand for $709,286.57 due to damage to the Crane. (Doc. 78 at 13; Doc. 72 at ¶ 24.) MAIC contends that the loss was the physical damage to the Crane, which happened sometime before January 2023. (Doc. 74-1 at 12–13.) The Court agrees with MAIC.

"Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning." *Cadwallader v. Allstate Ins. Co.*, 02-1637 (La. 6/27/03), 848 So. 2d 577, 580; *see* La. Civ. Code art. 2047. The Policy "cover[s] risks of direct *physical loss* unless the loss is limited or caused by a peril that is excluded." (Doc. 74-2 at 23.) The Court finds the plain, ordinary, and generally

prevailing meaning of "direct physical loss" means the physical, tangible, corporeal, loss or damage to Waskey's property. *See Cajun Conti LLC v. Certain Underwriters at Lloyd's, Lond.*, 2022-01349 (La. 3/17/23), 359 So. 3d 922, 926. The physical loss at issue was the damage to the Crane that happened sometime before January 2023. Waskey's financial liability to Markel is not a physical loss, though it is attributable to the physical loss.[5]

Next, the Court must determine when the loss, the damage to the Crane, occurred. MAIC correctly explains that under Louisiana law, the time of loss means the time of the damage, not the time of the ascertainment of loss from the damage. *Gremillion*, 240 So. 2d at 731 (holding that loss under a fire insurance policy happened on the day of the fire, not the day the insurance company offered plaintiff a settlement for a partial loss); *P.O.P. Constr. Co.*, 328 So. 2d at 107–08 (same); *Grice v. Aetna Cas. & Sur. Co.*, 61566 (La. 6/19/78), 359 So. 2d 1288, 1290 (holding that loss under a burglary and theft insurance policy happened on the date of the burglary); *Estate of DeGraauw v. Travelers Ins. Co.*, 2006-547 (La. App. 3 Cir. 9/27/06), 940 So. 2d 858, 863 (holding that loss under a homeowner's insurance policy happened the day Hurricane Lili hit, not the day an adjuster estimated the cost to repair the roof); *Pinion v. Pa. Millers Mut. Ins. Co.*, 4338 (La. App. 4 Cir. 3/8/71), 245 So. 2d 733, 735 (holding that loss under a homeowner's insurance policy happened the day Hurricane Betsy hit). Louisiana law is quite clear. Loss means the time of damage, regardless of whether that term is used in connection with phrases like "inception of loss" or "knowledge of loss."

Waskey argues these cases are inapposite and urges the Court to instead look to *Mangerchine v. Reaves*, 63 So. 3d at 1056, which defines loss as "the amount of an insured's

[5] Even if the Court accepted Waskey's argument that the loss happened in May 2024 when Maxim sent its demand letter for $709,286.57, the claims would be dismissed. The Policy at issue expired in June 2023. (Doc. 74-2 at 9.) A loss in May 2024 would not be covered under the Policy.

financial detriment by . . . damage that the insurer is liable for." The Court is unpersuaded. That definition is a *Merriam-Webster's Collegiate Dictionary* definition, not a statement of the law. Further, *Mangerchine* concerned what damage the insurance policy at issue covered, not whether the claim had prescribed. *Mangerchine* is inapposite. The loss to the Crane happened at some point prior to January 2023.

Despite its contentions otherwise, Waskey's pleadings clearly show it had knowledge of the loss when Maxim sent its notice letter in March 2023. The letter stated that the Crane "sustained damage" and advised Waskey to contact its insurer timely to submit a claim. (Doc. 6-3 at 1.) The damage, and therefore the loss, to the Crane must have pre-dated the March 21, 2023 letter. Again, Waskey's own pleadings comport with this conclusion because Waskey stopped using the Crane and terminated the lease in January 2023. (Doc. 72 at ¶ 22.) Even giving Waskey the benefit of the doubt that it did not know of the damage, the loss, until March 21, 2023, Waskey needed to have filed suit by March 21, 2025. Waskey's suit filed on September 16, 2025, is prescribed on its face. Waskey did not meet its burden to show that "the prescriptive period has been suspended, interrupted or renounced." *Wilhike*, 999 So. 2d at 85 (citations omitted). Therefore, MAIC's *MTD* is granted and Waskey's claims are dismissed without prejudice.

The Court finds it unnecessary to address MAIC's other arguments in the *MTD* because all claims have been dismissed.

## IV. Leave to Amend

"Federal Rule of Civil Procedure 15(a) requires the trial court to grant leave to amend 'freely,' and the language of this rule 'evinces a bias in favor of granting leave to amend.'" *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002) (quoting *Chitimacha Tribe of La. v. Harry L. Laws Co., Inc.*, 690 F.2d 1157, 1162 (5th Cir. 1983)). "[A] court ordinarily should

not dismiss the complaint except after affording every opportunity to the plaintiff to state a claim upon which relief might be granted." *Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1995). In *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, the court said:

> In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.

313 F.3d 305, 329 (5th Cir. 2002). Further:

> As the numerous case[s] . . . make clear, dismissal under Rule 12(b)(6) generally is not immediately final or on the merits because the district court normally will give the plaintiff leave to file an amended complaint to see if the shortcomings of the original document can be corrected. The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that the plaintiff be given every opportunity to cure a formal defect in the pleading. This is true even when the district judge doubts that the plaintiff will be able to overcome the shortcomings in the initial pleading. Thus, the cases make it clear that leave to amend the complaint should be refused only if it appears to a certainty that the plaintiff cannot state a claim. A district court's refusal to allow leave to amend is reviewed for abuse of discretion by the court of appeals. A wise judicial practice (and one that is commonly followed) would be to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the district court will be able to determine conclusively on the face of a defective pleading whether the plaintiff actually can state a claim for relief.

*JMCB, LLC v. Bd. of Commerce & Indus.*, 336 F. Supp. 3d 620, 642 (M.D. La. 2018) (deGravelles, J.) (quoting 5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2016)).

Thus, the Court will, in accordance with wise judicial practice, allow Waskey leave to amend its *Second Amended Complaint* to cure the above deficiencies, if it can do so. *See Watkins v. Gautreaux*, 515 F. Supp. 3d 500, 519 (M.D. La. 2021) (deGravelles, J.) (citing, *inter alia*, *Fetty v. La. State Bd. of Private Sec. Exam'rs*, 611 F. Supp. 3d 230, 250 (M.D. La. 2020) (deGravelles,

J.)). However, Plaintiff's counsel is reminded of their obligations under Federal Rule of Civil Procedure 11(b).

## V. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's *Motion to Dismiss Plaintiff's Second Amended Complaint* (Doc. 74) is **GRANTED** and Plaintiff's claims are **DISMISSED WITHOUT PREJUDICE.**

**IT IS FURTHER ORDERED** that Plaintiff shall have twenty-eight (28) days from the Court's ruling on Defendant's *Motion to Dismiss Plaintiff's Second Amended Complaint* (Doc. 74) in which to cure the above deficiencies if same can, in good faith, be cured. If Plaintiff fails to do so, all remaining deficient claims will be dismissed with prejudice.

Signed in Baton Rouge, Louisiana, on October 30, 2026.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**